## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **STEPHEN SPADACCINI,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**CAROLYN W. COLVIN, Acting**<br>**Commissioner of Social Security,**<br><br>    **Defendant.** | Civ. No. 15–7382 (KM)<br><br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Stephen Spadaccini brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying in its entirety his claim for Disability Insurance Benefits ("DIB") and denying in part his claim for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434 and 1381–1385. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is VACATED and REMANDED for consideration of Dr. Brabston's opinion as it may bear on Spadaccini's RFC from January 1, 2009 through March 5, 2011.

## I.    BACKGROUND

Spadaccini seeks to reverse an ALJ's finding that he was not disabled from September 1, 2007, through December 31, 2008, Spadaccini's date last insured. (Complaint, ECF no. 1, ¶¶ 8–9) Spadaccini also states that the ALJ failed to determine whether he was disabled from January 1, 2009, to March 5,

2011, for purposes of his claim for SSI, and he seeks a ruling on that issue. (*Id.*)

Spadaccini applied for DIB and SSI on August 1, 2008,[1] claiming that he was disabled since September 1, 2007, due to chronic heart failure, ischemic heart disease, recurrent arrhythmias, cardiomyopathy, coronary heart disease, stroke, arthritis, and depression. (R. 508)[2] His application was denied initially on January 23, 2008 (R. 81–84), and upon reconsideration on June 26, 2009 (R. 83–84). On April 15, 2011, following a hearing at which Spadaccini testified and was represented by counsel (R. 30–50), and a supplementary hearing so that Spadaccini could question medical expert Dr. Martin Fechner (R. 51–80), ALJ Richard West found that Spadaccini was "disabled," as defined in the Social Security Act, starting on March 6, 2011, and awarded SSI from that date. (R. 19–29). However, the ALJ also denied Spadaccini DIB because his insured status expired on December 31, 2008. (*Id.*) On August 9, 2012, the Appeals Council denied Spadaccini's request for review (R. 1–5), rendering the ALJ's decision the final decision of the Commissioner. Spadaccini then appealed to this Court, challenging the ALJ's determination that he was not disabled from September 1, 2007 through March 5, 2011.

On November 15, 2013, District Judge Martini of this Court vacated and remanded for reconsideration the Commissioner's decision. (R. 512) First, Judge Martini found that substantial evidence supported the ALJ's finding that Spadaccini does not have a listing-level impairment. (R. 509) Second, Judge Martini found that the ALJ did not err in affording greater weight to the opinion of medical expert Dr. Martin Fechner than to Spadaccini's treating physician

---

[1]  Spadaccini's Disability Determination and Transmittal forms date his application filings to July 22, 2008. (R. 81–82) However, the Application Summary sent to Spadaccini states that he applied for DIB and SSI on September 4, 2008. (R. 176) The parties use the August 1 filing date in their briefs.

[2]  Pages of the administrative record (ECF no. 7) are cited as "R. __."

Dr. Fuad Ahmad. (*Id.*) However, Judge Martini did find that the ALJ failed to adequately consider the assessment of Dr. Timothy Brabston, another of Spadaccini's treating physicians. Although the ALJ did mention Dr. Brabston's opinion, the ALJ neither indicated the weight he accorded to Dr. Brabston's opinion, nor did he adequately explain his implicit rejection of that opinion. (R. 511) As a result, the Court could not determine whether the ALJ's determination regarding Spadaccini's residual functional capacity ("RFC") was supported by substantial evidence. (*Id.*) As a further consequence, Judge Martini was unable to assess whether vocational expert testimony was required to determine whether Spadaccini was capable of performing jobs that exist in significant numbers in the national economy. (*Id.*)

On remand, on June 15, 2015, ALJ West determined that Spadaccini was not under a disability, as defined in the Social Security Act, at any time from September 1, 2007, through December 31, 2008, the date last insured. (R. 428) However, the ALJ did not make a determination on remand as to whether Spadaccini was disabled at any time from January 1, 2009, through March 5, 2011. Spadaccini now appeals the ALJ's decision.

## II.  DISCUSSION

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To be eligible for Title XVI SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify under either statute, a claimant must show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see, e.g., Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

3

### A. Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration (the "Commissioner") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (Those Part A criteria are purposely set at a high level, to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

4

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the claimant's disability, and . . . the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. §§ 405(g) and 1383(c)(3), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d

Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007) (not precedential).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B.     The ALJ's Decision

ALJ West properly followed the five-step process in determining that Spadaccini was not disabled for the period from September 1, 2007, through December 31, 2008. His findings may be summarized as follows.

### Step 1

At step one, the ALJ determined that Spadaccini had not engaged in substantial gainful activity in the relevant period. (R. 423 ¶ 2)

### Step 2

At step two, the ALJ found that Spadaccini had the following severe impairments: "coronary artery disease, cardiac dysrhythmia, hypertension, osteoarthritis, and a history of cocaine and alcohol abuse and depression" (R. 423 ¶ 3)

### Step 3

At step three, the ALJ determined that, through the date last insured, Spadaccini's impairment or combinations of impairments did not meet or medically equal the severity of one of the listed impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (R. 424 ¶ 4)

**Step 4 – RFC /Ability to Perform Past Work**

At step four, "[a]fter careful consideration of the entire record," the ALJ found that, through the date last insured, Spadaccini had "the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant: cannot climb ladders, ropes or scaffolds, or crawl; can occasionally climb ramps and stairs, balance, kneel, crouch and stoop; must avoid concentrated exposure to extreme cold, extreme heat, humidity, wetness, vibrations, dust, fumes and similar occupational irritants; [and] must avoid exposure to hazards." (R. 425 ¶ 5) The ALJ also found that the demands of Spadaccini's past relevant work exceed his RFC. (R. 427 ¶ 6)

**Step 5**

At step five, the ALJ considered Spadaccini's "age, education, work experience, and residual functional capacity" and the Medical-Vocational Guidelines, and determined that, prior to March 6, 2001, Spadaccini could have performed jobs that existed in significant numbers in the national economy. (R. 428 ¶ 10) The ALJ found that Spadaccini's additional limitations "had little or no effect on the occupational base of unskilled sedentary work." (R. 428)

Accordingly, ALJ West concluded that Spadaccini was not under a disability, as defined in the Social Security Act, through December 31, 2008, the date of last insured. (*Id.*)

The ALJ was silent, however, as to whether Spadaccini was disabled at any time from January 1, 2009, through March 5, 2011.

**C.    Disability through December 31, 2008**

I set aside for now the determination that the ALJ did *not* make. As to the determination that the ALJ *did* make (*i.e.,* that Spadaccini was not disabled through December 31, 2008), Spadaccini challenges his findings at steps four and five. At step four, Spadaccini argues, the ALJ did not properly support his

RFC determination—finding a capacity for the full range of sedentary work through December 31, 2008—with evidence that Spadaccini can sit for six hours each workday.[3] (Pl. Br. 19) Also at step four, Spadaccini contends, the ALJ improperly rejected the opinions of his treating physicians.[4] (Pl. Br. 20–22) At step five, Spadaccini argues, the ALJ improperly relied on a Social Security Ruling and did not consult a vocational expert on the record.[5] (Pl. Br. 22–29)

Spadaccini requests that this Court reverse the ALJ's decision or remand the decision to the Commissioner for a new hearing and decision. Addressing each of Spadaccini's arguments in turn with regard to the period from September 1, 2007 through December 31, 2008, I find that the ALJ's findings do not contain any errors of law or procedure, and they are supported by substantial evidence.

### 1.    The ALJ's RFC Evaluation

Judge Martini vacated the ALJ's findings at step four because the ALJ had failed to analyze Dr. Brabston's assessment. I find that the ALJ has now properly explained his rejection of Dr. Brabston's opinion, and the determination that Spadaccini retained the RFC to perform sedentary work prior to December 31, 2008, is supported by substantial evidence.

Residual functional capacity is an assessment of the most a claimant can

---

[3]    Additionally, Spadaccini takes issue with the fact that Dr. Micale, the state agency review consultant, was characterized as an "impartial medical consultant," and Dr. Micale offers no explanation for his rejection of the restrictions in the record. Drs. Fechner, Micale, and Galst never treated Spadaccini, and Galst's RFC is never mentioned.

[4]    Spadaccini argues that the ALJ rejected his treating physicians' opinion that he cannot sit six hours as not "well supported," by the medical evidence in the record, but "this rejection was the reason for the first District Court remand." (Pl. Br. 21)

[5]    "All of a sudden, plaintiff has no significant non-exertional limitations. The medical record cannot support this convenient conclusion. Vocational testimony was absolutely required." (Pl. Br. 29)

do despite his impairments. *See* 20 C.F.R. § 404.1545. To determine a claimant's RFC, an ALJ must engage in a two-step process: first, consider all of a claimant's symptoms which can reasonably be accepted as consistent with the objective medical evidence, and second, determine how those symptoms affect the claimant's ability to work. 20 C.F.R. § 404.1529. Here, ALJ West determined that Spadaccini had the residual functional capacity to "perform sedentary work" with additional limitations. (R. 425)

To perform sedentary work, a claimant must generally be able to sit for six hours in an eight-hour workday.[6] Spadaccini argues that the ALJ erred in finding that he is able to perform sedentary work because, he contends, the evidence shows that he cannot sit for six hours each workday. In particular, Spadaccini's physician, Dr. Timothy Brabston, had reported in April 2009 that Spadaccini was unable to sit for six hours per day (R. 382), and Spadaccini takes exception to the ALJ's rejection of the opinion of his treating physician in favor of the opinion of the Commissioner's consultative examiner.[7]

---

[6]     As the Commissioner has explained:

> Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday.

(SSR 96-9p)

[7]     Spadaccini also makes much of the fact that Drs. Brabston, Ahmad, and Galst all agree that Spadaccini cannot sit for more than four hours. (*See* Pl. Br. 21–22) In particular, although the ALJ indicates that he accorded Dr. Galst's opinion "great weight," he allegedly ignored Dr. Galst's opinion that Spadaccini could not sit for more than four hours. (Pl. Br. 19) This argument has little merit. First, Judge Martini already affirmed the ALJ's rejection of Dr. Ahmad's opinion. Second, Dr. Galst opined on Spadaccini's RFC, including his ability to sit, as it was upon examination in 2011, but offered no opinion as to Spadaccini's RFC as it was in December 2008. (*See* R. 483–84)

9

True, in general, the opinion of a medical professional who has treated the claimant is entitled to deference. 20 CFR § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . ."); *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("Treating physicians' reports should be accorded great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." (internal quotation marks omitted)).

But the opinion of a treating source must be given "controlling weight" only when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 CFR § 404.1527(c)(2). Further, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011). Rather, "[s]tate agent opinions merit significant consideration as well." *Chandler v. Comm'r of Soc. Sec*, 667 F.3d 356, 361 (3d Cir. 2011).

If the treating physician's opinion is not accorded controlling weight, the ALJ must weigh it, like any other medical opinion, in light of the factors set forth in 20 CFR § 404.1527. *See* 20 CFR § 404.1527(c)(1-6) (ALJ must consider: (i) the examining relationship between the claimant and the doctor; (ii) the treatment relationship between the claimant and the doctor; (iii) the extent to which the opinion is supported by relevant evidence; (iv) the extent to which the opinion is consistent with the record as a whole; and (v) whether the doctor providing the opinion is a specialist.) Although "contradictory medical evidence is required for an ALJ to reject a treating physician's opinion outright, such an opinion may be afforded more or less weight depending on the extent

10

to which supporting explanations are provided." *Plummer*, 186 F.3d at 429 (citation omitted).

I find that, on remand, the ALJ sufficiently analyzed Dr. Brabston's opinion and explained his reasons for assigning it little weight and for rejecting it in favor of medical consultant Dr. Fechner's opinion that Spadaccini could perform sedentary work. (R. 426–27) ALJ West discussed Dr. Brabston's reports from 2008 (R. 699) and 2009 (R. 382), and offered several reasons for his decision to assign little weight to Dr. Brabston's evaluation that Spadaccini is unable to work. In doing so, the ALJ considered many of the factors set forth in 20 CFR § 404.1527(c)(1-6), including the frequency of Dr. Brabston's examinations of Spadaccini, the conservative treatment Dr. Brabston provided, the degree to which Dr. Brabston offered support for his opinion, and inconsistencies within Dr. Brabston's reports and between those reports and the record as a whole.

First, "Dr. Brabston's conclusory opinion does not adequately articulate why the claimant would be unable to perform sedentary work, and there is nothing in his treatment notes that reflect a persuasive rationale why the claimant would be unable to perform sedentary work." (R. 426) The ALJ further noted that: (1) A finding that Spadaccini was unable to sit for less than six hours a day is inconsistent with Spadaccini's impairments at that time; (2) Spadaccini visited Dr. Brabston for treatment only semiannually; and (3) Dr. Brabston's opinion, (R. 691), that Spadaccini cannot sit for six hours a day "is inconsistent with the conservative medical treatment that Dr. Brabston himself has provided." (R. 426)

ALJ West also noted that in a report Dr. Brabston completed in September 2008, he indicated that Spadaccini was unable to work due to heart problems and back pain, noting also that Spadaccini is unable to lift more than five pounds. (R. 693–97) However, the ALJ observed that Dr. Brabston's assessment of Spadaccini's work-related limitations are inconsistent with Dr.

11

Brabston's contemporaneous indication "that he could not provide a medical opinion regarding his patient's ability to do work related activities based on his medical findings, and did not report any limitations in lifting, carrying, standing, walking, sitting, pushing, pulling or other exertional and nonexertional limitations." (R. 426; *see also* R. 696) Additionally, the September 2008 report "emphasizes that [Spadaccini's] back pain, and not his cardiac condition, was the basis of [Dr. Brabston's] opinion."[8] (R. 426; *see also* R. 697) The ALJ further noted that, although Dr. Brabston did report limitations on Spadaccini's ability to do work-related activities in April 2009, the September 2008 report is the more relevant report to Spadaccini's disability status on the last insured date in December 2008. (*Id.*) Finally, ALJ West observed that Dr. Brabston's progress notes written from December 2007 through March 2010 "characterize [Spadaccini's] chronic lumbar pain as a 'dull ache' and further note that [Spadaccini's] use of Percocet regularly has had 'acceptable results' and 'provides adequate relief.'"[9] (R. 427; *see also* R. 699–717)

In sum, ALJ West's decision adequately indicates the basis for his determination, and the record as a whole supports his conclusion as to Spadaccini's RFC through December 31, 2008. The RFC for that period is thus supported by substantial evidence. When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*,

---

[8]     Lower back pain was not one of Spadaccini's severe impairments.

[9]     Although Spadaccini also contends that his psychiatric restrictions contradict the RFC for the full range of sedentary work (Pl. Br. 20), ALJ West observed that Dr. Brabston's August 11, 2008 progress notes indicate that Spadaccini's depression only "mildly impair[ed]" his concentration and that Spadaccini reported "great results" from taking his girlfriend's Cymblata. (R. 427; *see also* R. 708–10) Dr. Brabston's reports do not contradict the ALJ's finding that Spadaccini "can understand, remember and carry out simple instructions; can make judgments commensurate with the functions of unskilled work; can respond appropriately to supervision, coworkers and usual work situations; and can deal with changes in a routine work setting." (R. 425)

364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder."). I therefore affirm the ALJ's RFC determination.

### 2.    The ALJ's Step Five Analysis

Next, Spadaccini argues that the ALJ failed to properly support his step five determination with evidence from a vocational expert ("VE"). (Pl. Br. 28–29) Specifically, Spadaccini argues that VE testimony on the record[10] was necessary because: (1) He allegedly was unable to perform the full range of sedentary work due to an inability to sit for six hours; and (2) He allegedly was significantly limited in his ability to concentrate by psychiatric conditions. (*Id.* at 29)

At step five, the Commissioner bears the burden of showing that the claimant can perform work which exists in the national economy, in light of his age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v). That analysis may depend on whether the claimant has only exertional limitations, or has nonexertional limitations. Exertional limitations are impairment-caused limitations that affect a claimant's ability to meet the strength demands of a job: sitting, standing, walking, lifting, carrying, pushing, and pulling. *See* 20 C.F.R. § 404.1569a(b); SSR 96-9p. Nonexertional limitations are impairment-caused limitations that affect a claimant's ability to meet the other demands of a job, including mental capabilities; vision and hearing; postural functions such as climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling; and environmental restrictions. *See* 20 C.F.R. § 404.1569a(c)(1)(i-vi); SSR 96-9p.

---

[10]    I note that ALJ West examined VE Jackie Wilson in connection with Spadaccini's case at a June 13, 2014 hearing.  The examination, however, was not conducted on the record. (R. 465–66)

Where a claimant has only exertional limitations, the Commissioner may use the Medical-Vocational Rules to determine whether such work exists. The Medical-Vocational Rules set forth tables, or grids, with various combinations of age, education, work experience and RFC, and direct a finding of disabled or not disabled for each combination. *See* 20 C.F.R. Part 404, Subpt. P, App. 2. An ALJ "may rely on these grids to establish that jobs exist in the national economy that a person with the claimant's exertional limitations could perform." *Sykes v. Apfel,* 228 F.3d 259, 263 (3d Cir. 2000). However, this applies only to exertional limitations; where the claimant has nonexertional limitations, the grids provide only a framework, and the ALJ must consider additional evidence to determine whether there are jobs in the national economy that someone with the claimant's combination of impairments could perform. *Id.* at 270; *see also Allen v. Barnhart,* 417 F.3d 396, 404 (3d Cir. 2005).

Where a claimant has nonexertional impairments, an ALJ is permitted to rely on Social Security Rulings as the additional evidence required under *Sykes v. Apfel*; such SSRs, if directly applicable, may be a permissible substitute for the testimony of a vocational expert. *See Allen,* 417 F.3d at 406 ("While, surely, the Agency can use its rules as a substitute for individualized determination, nonetheless, there must be a 'fit' between the facts of a given case, namely, the specific nonexertional impairments, and the way in which the Rule dictates that such nonexertional limitations impact the base."). But "it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work," and the ALJ must discuss this. *Id.,* at 407.

Before I reach Spadaccini's specific contentions regarding alleged limitations not reflected in the ALJ's RFC findings, I note as a general matter that to the extent Spadaccini contends that the ALJ failed to support his finding that the nonexertional limitations acknowledged in the RFC had little to

14

no effect on the occupational base of sedentary work, I disagree. The ALJ incorporated by reference Section 10 of his April 15, 2011 Decision, in which he cited to SSR 96-9p and SSR 85-15 as additional evidence supporting the grid recommendation. (R. 27–28) In combination, those SSRs demonstrate that the nonexertional limitations in Spadaccini's RFC have no significant impact on his ability to do sedentary work.[11]

Additionally, to the extent that Spadaccini contends that the ALJ failed to give required advance notice of his intention to rely on the SSR (*see* Pl. Br. 28), I disagree. Although the Third Circuit has "urge[d]" that it is always appropriate, "as a matter of fairness," to notify the claimant in advance, such notice is not required in every case. *Allen,* 417 F.3d 407. Where advance notice is absent, "it [is] only appropriate" for a court "to give close scrutiny to the ALJ's reliance on a Ruling." *Id.*; *see also Breslin v. Comm'r of Soc. Sec.*, 509 F. App'x 149, 155 (3d Cir. 2013) (notice was not required where the "the Rulings the ALJ relied upon . . . applied directly to [the claimant's] non-exertional

---

[11]    First, Spadaccini's inability to "climb ladders, ropes or scaffolds, or crawl" and the requirement that he "must avoid concentrated exposure to extreme cold, extreme heat, humidity, wetness, vibrations, . . . [and] avoid exposure to hazards," (R. 425 ¶ 5), do not significantly erode the occupational base for sedentary work. SSR 96-9p ("Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly. . . . In general, few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards.").

Second, SSR 85-15 makes clear that the requirement that Spadaccini "must avoid concentrated exposure to . . . dust, fumes and similar occupational irritants" has similarly little effect on a person's ability to do unskilled sedentary work. SSR 85-15 ("Where a person has a medical restriction to avoid excessive amounts of . . . dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great . . . amounts of dust, etc.").

Finally, an ability to stoop and balance occasionally is required for most unskilled sedentary occupations, *see* SSR 96-9p, but the ALJ found that Spadaccini is able to do so. (R. 425 ¶ 5) (Spadaccini "can occasionally climb ramps and stairs, balance, kneel, crouch and stoop.")

15

impairments.") Here, I find that the ALJ's reliance on SSR 96-9p and SSR 85-15 passes close scrutiny because those Rulings apply directly to Spadaccini's nonexertional limitations.

I now address Spadaccini's two specific arguments. First, Spadaccini's contention that his alleged inability to sit for six hours eroded his ability to perform the full range of sedentary work to the extent that VE testimony was required assumes that he has established such an inability during the relevant period. However, as discussed above, substantial evidence supports the ALJ's determination that Spadaccini *was able* to sit for six hours through December 21, 2008. That finding precludes Spadaccini's counterfactually-based step five argument.

Second, Spadaccini's argument that his psychiatric conditions significantly impacted his ability to do unskilled sedentary work is unavailing. He argues that "the uncontradicted evidence of psychiatric disturbance-PTSD and major depressive disorder-along with the corresponding psychiatric limitations acknowledged by the Commissioner to limit plaintiff ability to concentrate complete a normal work day-work week, and adapt to job conditions, is completely forgotten and ignored in the formulation of the RFC." (Pl. Br. 29) Indeed, psychological consultant Clara Castillo-Velez, Ph.D., reported on January 22, 2009, that Spadaccini suffered from affective, anxiety-related, and substance addiction disorders. (R. 354) She found that Spadaccini was moderately limited in some abilities related to understanding and memory, sustained concentration and persistence, and adaptation.[12] (R. 368–69)

---

[12]    Specifically, Dr. Castillo-Velez found that Spadaccini was moderately limited in his ability to understand and remember detailed instructions. (R. 368) He also had moderate difficulties in several areas related to sustained concentration and persistence including his ability to: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; make simple work-related decisions; and complete a normal workday and workweek without

Spadaccini argues that these nonexertional limitations "eliminate any possibility of utilizing the grid rulings to satisfy the Commissioner's step 5 burden." (Pl. Br. 16)

This argument is not really a step five argument, but rather a challenge to the step four RFC findings. However, Judge Martini remanded the ALJ's step four RFC determination to the Commissioner for the *limited* purpose of analyzing Dr. Brabston's assessment. Spadaccini's psychiatric disturbances play no part in Dr. Brabston's opinion that Spadaccini was already unable to work in December 2008. Therefore, Spadaccini does not properly raise the issue now.

I nevertheless note, that Dr. Castillo-Velez concluded in her functional capacity assessment that Spadaccini "can maintain concentration, persistence, and pace for simple tasks." (R. 370) Her conclusions are largely reflected in the ALJ's RFC findings, which state that Spadaccini, "can understand, remember and carry out simple instructions; can make judgments commensurate with the functions of unskilled work; can respond appropriately to supervision, coworkers and usual work situations; and can deal with changes in a routine work setting."[13] (R. 425) I further note that a consultative psychological

---

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 368–69) With regard to adaptability, Dr. Castillo-Velez found that Spadaccini had moderate difficulties with the ability to respond appropriately to changes in the work setting and the ability to set realistic goals or make plans independently of others. (R. 369)

[13]   Dr. Castillo-Velez's assessment that Spadaccini was "moderately limited" in his ability to respond appropriately to changes in the work setting does not necessarily contradict the ALJ's RFC finding that Spadaccini "can deal with changes in a routine work setting." (R. 425) "Moderately limited," in the context of the Mental Residual Functional Capacity Assessment, means that "the individual's capacity to perform the activity is impaired," but does not require that the individual's capacity be at a level that is unacceptable in a national workforce. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 636-37 (3d Cir. 2010) (citing POMS DI 24510.063(B)(2), *available at* https://secure.ssa.gov/appsl0/porns.nsf/lnx/0424510063. Rather, the assessment instructions specify that "[t]he degree and extent of the capacity or limitation must be

examination conducted by Dr. Solomon Miskin in 2009, found that Spadaccini scored a GAF of 60–65, reflecting only moderate or mild symptoms. (R. 353) Thus, I conclude that the ALJ's RFC findings regarding Spadaccini's mental residual functional capacity are supported by substantial evidence.

Accordingly, because substantial evidence supports the ALJ's RFC determination that Spadaccini was able to perform sedentary work with limitations that have little or no effect on that occupational base, the disability determination was properly made by application of the Medical-Vocational Rules grids and Social Security Rulings ("SSRs") without any VE testimony.

### D.    SSI from January 1, 2009, through March 5, 2011

I must consider one further issue. Judge Martini remanded the case to the ALJ for consideration of Dr. Brabston's opinion in connection with disability through March 6, 2011. On remand, however, ALJ West appears to have understood the remand to require only that he analyze Dr. Brabston's opinion as it relates to Spadaccini's claim for DIB, which runs only through December 31, 2008, the date last insured. That left a gap. On remand, the ALJ failed to explicitly consider whether Spadaccini was disabled at any time from January 1, 2009 through March 5, 2011. If Spadaccini was disabled during the latter period, he would possibly be entitled to SSI. For the reasons expressed below, I will remand this case to the ALJ for the limited purpose of analyzing Dr. Brabston's opinion as it may bear on Spadaccini's disability status from January 1, 2009 through March 5, 2011.

---

described in narrative format in Section III." *Id.* Dr. Castillo-Velez notes in Section III that Spadaccini "[c]an maintain concentration, persistence and pace for simple tasks" (R. 370), but does not mention any limitation regarding his ability to complete a normal work day-work week or to adapt to job conditions. Thus, Spadaccini's citation to Dr. Castillo-Velez's report is insufficient to carry his burden at step four to establish limitations beyond those already incorporated into the ALJ's RFC findings.

I do not fault the ALJ, who was confronted with a confusing set of indications as to whether, on remand, Spadaccini was seeking review of the SSI, as opposed to the DIB, denial.

Now, in this Court, there is every indication that Spadaccini seeks review of the ALJ's denial of SSI benefits from January 1, 2009 through March 5 2011. First, Spadaccini's civil cover sheet indicates that the nature of the suit involves both "863 DIWC/DIWW (405(g))," and "864 SSID Title XVI." (ECF no. 1-3) These refer to both DIB and SSI. Second, his Complaint in this Court notes that "the ALJ made no finding as to whether [Spadaccini] was disabled from January 1, 2009 to March 5, 2011 for Title 16 purposes based on plaintiff's SSI Application of January 22, 2008." (Compl., ECF no. 1, ¶ 8) Third, the Complaint requests that the Court vacate the denial of both Spadaccini's DIB *and* SSI benefits. (*Id.* p. 3, ¶ 3) Finally, I note that although Spadaccini's brief contains only DIB-related arguments, those arguments are equally helpful to his SSI claim; if Spadaccini was found to be disabled for the purposes of DIB prior to December 31, 2008, he would *ipso facto* be disabled for the purposes of SSI in the period from the date of onset through March 5, 2011.[14]

On remand to the SSA, however, Spadaccini may have given the ALJ reason to think that he was not pressing any argument regarding SSI benefits for January 1, 2009 through March 5, 2011. First, Spadaccini's Appointment of Representative form noted that James Langton and Abraham S. Alter were appointed to represent Spadaccini in connection with his Title II claim only. (R. 550) Second, nearly one year prior to the ALJ's decision on remand, in a letter dated July 30, 2014, Langton wrote to ALJ West that: "As the record shows the claimant has been found disabled from March 6, 2011 however the current issue is disability before the [date last insured ("DLI")] December 31, 2008." (R.

---

[14]     This statement depends on my assumption, *arguendo*, that Spadaccini met all other SSI requirements laid out in 20 C.F.R. § 416.202.

683) Similarly, on April 15, 2015, at a hearing before the ALJ, Langton stated: "By the DLI, this claimant could not have functioned on a day-to-day basis doing sedentary work *which is what this case is basically, was remanded to decide.*" (R. 504) (emphasis added) References to the DLI (date last insured) may have implied that the claims were limited to DIB.

The ALJ explicitly stated that the scope of the issue "before this tribunal [on remand] is whether the claimant was disabled, for purposes of his Disability Insurance Benefits application, prior to his last insured date of December 31, 2008." (R. 421) There is no sign in Spadaccini's brief that he objected to such narrowing of the issues until the Court brought it to the parties' attention. True, the opening statement contains boilerplate language, seeking review in the alternative pursuant to "42 U.S.C. 405(g) and/or 1383(c)(3)" of the Commissioner's determination "which denied plaintiff's application for Disability Benefits, under Title II and/or title XVI of the Social Security Act." (Pl. Br. 2) But nothing else in the brief, not even a statutory or regulatory citation, pertains to SSI. The Commissioner correctly notes that arguments not raised in a plaintiff's initial brief are generally waived. *See generally, United States v. Pelullo*, 399 F.3d 197, 222, 2005 WL 433589 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."); *Aiellos v. Zisa*, No. CIV. A. 09-3076, 2009 WL 3486301, at *1 (D.N.J. Oct. 20, 2009) ("It is hornbook law that arguments raised for the first time in a reply brief are waived."). The Commissioner's brief notes that "On remand . . . the ALJ noted that SSI was not at issue" (Def. Br. 2 n.1)

Still, I am loath to find a waiver where the indications are so contradictory and unclear. I will remand this case to the ALJ for the narrow purpose of analyzing the effect, if any, of Dr. Brabston's opinion on Spadaccini's disability status, and especially his RFC, for the period from

January 1, 2009 through March 5, 2011. In the event that the ALJ modifies Spadaccini's RFC, then a new step five determination will be necessary.

In remanding for a second time on these limited grounds, I give great weight to the scope of Judge Martini's remand, which did not limit the initial remand to consideration of DIB, but encompassed SSI as well. It is true that counsel did not address the January 1, 2009–March 5, 2011 period until prompted to do so by the Court, and there are indications that counsel did not press the SSI issue on the first remand. Nevertheless, I will not have the claimant, whose condition may have worsened over time, to suffer based on a waiver that is at best ambiguous. The ALJ may or may not arrive at a different outcome on this, the second remand. However, that is for the ALJ—not this Court—to determine in the first instance.

## CONCLUSION

The ALJ's denial of Spadaccini's claim for DIB contains no errors of law and is supported by substantial evidence. However, the ALJ made no finding on remand as to Spadaccini's claim for SSI from January 1, 2009, through March 5, 2011. The Commissioner's decision is therefore VACATED AND REMANDED for reconsideration of the ALJ's step four and five determinations between those dates, in light of Dr. Brabston's opinions. An appropriate order accompanies this Opinion.

Dated: March 30, 2017

**KEVIN MCNULTY**
**United States District Judge**